UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
M&A METALS, INC. d/b/a INTERIOR
METALS, INC.,

      Plaintiff,      **MEMORANDUM & ORDER**
                21-CV-5570 (PKC) (PK)
  - against -

JOHN FINA; MAUREEN FINA; FINA
METALS; TONY NEHME; and DOES 1-5,

      Defendants.
---------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

M&A Metals, Inc., d/b/a Interior Metals, Inc. ("Interior Metals"), alleges that John Fina, Interior Metals' former Chief Operating Officer, and others caused it economic harm by engaging in a variety of misconduct under federal and state law. Defendants John Fina ("Fina"), Maureen Fina ("M. Fina"), Fina Metals, Inc. ("FMI"), and Tony Nehme ("Nehme") move to dismiss the Second Amended Complaint ("SAC") based on Rule 12(b)(1) and Rule 12(b)(6). For the reasons stated herein, Defendants' motion is denied in full, with the lone exception of Plaintiff's unfair competition claim, which is dismissed as duplicative of its Defend Trade Secrets Act claim.

## BACKGROUND[1]

### I. Factual Allegations

Founded in 1994, Interior Metals operates in the metal industry and provides custom-made metal products. (Dkt. 42, ¶¶ 18–19.) Fina started working for Interior Metals in 2003, steadily ascending through its ranks and eventually assuming a managerial role. (*Id.* ¶¶ 20–22.) In 2018,

---

[1] For the purposes of this motion, the Court "accept[s] all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor." *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 53 (2d Cir. 2022); *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 90–91 (2d Cir. 2021) (same).

Fina resigned from Interior Metals to pursue other ventures in the metal industry. (*Id.* ¶ 26.) During that period, Fina and his wife, M. Fina, founded their own enterprise—FMI.[2] (*Id.* ¶ 28.) Six months after Fina's departure from Interior Metals, the company invited him to rejoin the company and assume a new role as Chief Operating Officer ("COO"). (*Id.* ¶ 27.) In January 2019, Fina accepted Interior Metals' offer and began managing its bidding department, overseeing bids for various construction projects with prospective clients. (*Id.* ¶¶ 27, 31–32.) In that capacity, Fina learned Interior Metals' "bidding strategy, client information, bidding requirements, and intention[s]." (*Id.* ¶ 36.) Between 2019 and 2021, on five occasions, Fina oversaw and executed client bids on Interior Metals' behalf, in sums ranging from $18,720 to $98,200. (*Id.* ¶¶ 38–39.) Unbeknownst to Interior Metals, Fina then transmitted information about Interior Metals' secret bids to M. Fina. (*Id.* ¶¶ 38, 41.) M. Fina, assisting in the day-to-day operations of FMI, relied on this information in executing competing bids on FMI's behalf for the same projects. (*Id.* ¶¶ 37, 39, 41.) FMI submitted bids for these five projects at prices markedly lower than Fina caused Interior Metals to bid.[3] (*Id.*) FMI won all five projects.[4]

Throughout his employment with Interior Metals, Fina never signed an employment contract or "non-compete" covenant with the company. (*See id.* ¶¶ 42–43.) However, Interior

---

[2] M. Fina serves as FMI's president. (Dkt. 42, ¶¶ 14, 37.)

[3] On January 19, 2019, Fina caused Interior Metals to bid $18,720 for a New York-based project, and later FMI bid $16,450 for the same project. (Dkt. 1, ¶ 38A.) Similar bids followed, with respect to four other projects in New York, namely: (1) Hudson Research Center project: Interior Metals' bid: $55,125; FMI's bid: $38,000 (*id.* ¶ 38C), (2) Tri-Star project: Interior Metals' bid: $23,750; FMI's bid: $19,995 (*id.* ¶ 38D), (3) 485 Lexington Avenue project: Interior Metals' bid: $98,200; FMI's bid: $76,000 (*id.* ¶ 38E), (4) 350 Park Avenue project: Interior Metals' bid: $34,650; FMI's bid $29,450 (*id.* ¶ 38F).

[4] On one occasion, one of Interior Metals' clients approached Fina and asked him to submit a bid for a project it had been planning to work on. (*Id.* ¶ 38B.) Instead of referring the business opportunity to Interior Metals, FMI submitted its own bid for $15,500 and obtained the project itself. (*Id.*)

Metals and Fina entered into a verbal agreement relating to the relationship between Interior Metals and FMI, pursuant to which Interior Metals agreed to provide labor and services for FMI's projects, for a cut of the profit, so long as FMI refrained from competing with Interior Metals in obtaining these projects. (*Id.* ¶¶ 35, 40.) On multiple occasions, Interior Metals provided services for FMI and, at times, did so at a loss. (*Id.* ¶ 69.) When acting on the parties' oral contract, Interior Metals' billing department neither communicated with its bidding department, which Fina headed, nor otherwise verified whether Fina upheld his side of the verbal bargain. (*Id.* ¶ 40.) No one at Interior Metals ever did so. (*See id.*) FMI still owes $238,780 to Interior Metals for these services. (*Id.* ¶¶ 35, 75.) At some point, Interior Metals demanded documentations for the orders that Fina and FMI had placed on various projects and Fina's/FMI's bidding scheme came to light. (*Id.* ¶¶ 41–42.)

In 2021, Interior Metals sought to formalize its relationship with Fina and sent him a proposed employment agreement, which included a non-compete clause. (*Id.* ¶¶ 42–44.) Fina took no action with respect to the proposed contract for over six months, and he refused to discuss any condition limiting his ability to compete with Interior Metals. (*Id.* ¶¶ 43–44.) Growing concerned, Interior Metals approached Fina in the summer of 2021 and demanded that he refrain from using FMI to compete with Interior Metals. (*Id.* ¶ 46.) Fina refused and resigned. (*Id.* ¶ 47.) Before his departure, Fina attempted to convince Interior Metals employees to resign and join FMI. (*Id.*) Fina also accessed Interior Metals' computers and obtained customer lists and bidding information before his resignation. (*Id.* ¶ 48.) In addition, he sent a promotional email to Interior Metals' customers publicizing his departure and inviting Interior Metals' customers to contract with him and FMI. (*Id.* ¶ 49.)

Two months after Fina's resignation, in the early hours of the morning, Defendant Nehme—an ex-Interior Metals employee—arrived with a truck to Interior Metals' Brooklyn offices. (*Id.* ¶ 51.) Nehme entered Interior Metals' offices, took $10,000 worth of Interior Metals equipment, loaded the equipment into the truck, and drove to Fina's home office in Brooklyn. (*Id.* ¶¶ 52–53.) There, Nehme began unloading the equipment outside Fina's premises. (*Id.*) When spotted, Fina claimed that the delivery was a mistake and returned the property to Interior Metals. (*See id.* ¶¶ 52–55.)

## II.  Procedural History

Interior Metals sued Defendants on October 7, 2021. (Dkt. 1.) It filed the SAC on February 7, 2022, alleging eleven causes of action: (1) trade secret misappropriation in violation of the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1832; (2) violations of New York law, including breach of fiduciary duty, breach of contract, unfair competition, tortious interference with contract and business relationships, tortious conversion, and civil conspiracy; and (3) restitution claims sounding in unjust enrichment, quantum meruit, and equitable accounting. (*See* Dkt. 42, ¶¶ 57–114.) Interior Metals also moved for preliminary and permanent injunctions, compensatory and punitive damages, pre- and post-judgment interest, disgorgement, accounting, and any other relief that the Court deems proper. (*Id.* at 25.)[5] On March 21, 2022, Defendants filed the present a motion to dismiss, based on Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), which Plaintiff now opposes. (Dkts. 46–49.)

---

[5] On November 1, 2021, in connection with Interior Metals' motion for a preliminary injunction, the Court held a show-cause hearing. (11/01/2021 Minute Entry.) The Court eventually denied Interior Metals' motion, finding that Plaintiff had "not met its burden to show that Defendants have taken or possess the alleged trade secrets that Plaintiff seeks to prevent Defendants from using." (11/05/2021 Order.) Separately, the Honorable Peggy Kuo, Magistrate Judge, denied Plaintiff's request for expedited discovery as unnecessary. (10/20/2021 Minute Order.)

## STANDARD OF REVIEW

**I.**     **Rule 12(b)(1)**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "[A] Rule 12(b)(1) motion challenging subject matter jurisdiction may be either 'facial,' i.e., based solely on the allegations of the complaint and exhibits attached to it, 'or fact-based,' i.e., based on evidence beyond the pleadings." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022); *see SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020) (explaining that on a "motion under Rule 12(b)(1)[,] [courts] may also rely on evidence beyond the pleadings"). However, "[w]hen the extrinsic evidence submitted by the parties does not controvert the material allegations of the complaint, it is not error for the district court to base its ruling solely on the allegations of the complaint[.]" *Harty*, 28 F.4th at 441; *see also Makarova*, 201 F.3d at 113 ("[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.").

**II.**     **Rule 12(b)(6)**

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Khan v. Yale Univ.*, 27 F.4th 805, 817 (2d Cir. 2022) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "[A]t the motion to dismiss stage, [] a court must assume the truth of the plaintiff's allegations and avoid resolving factual disputes." *Oakley v. Dolan*, 980 F.3d 279, 284 (2d Cir. 2020); *see also Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013) ("[The Court will] accept as true all factual allegations and draw from them all reasonable inferences[,] but [is] not required to

credit conclusory allegations or legal conclusions couched as factual allegations."). Ultimately, "[a] court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the SAC itself is legally sufficient." *Cornelio v. Connecticut*, 32 F.4th 160, 168 (2d Cir. 2022) (cleaned up).

## DISCUSSION

### I. Defend Trade Secrets Act Claims

#### A. Legal Standards

Section 1836 of the DTSA provides a private cause of action for "[1] [a]n owner of a trade secret" which was "[2] misappropriated" and "[3] related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). "The elements for a misappropriation claim under New York law are fundamentally the same [as under Section 1836] . . . [and] [d]istrict courts often rely on cases discussing misappropriation under New York law to analyze DTSA claims." *Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020) (cleaned up). When a claimant proves "actual or threatened misappropriation," then "injunctive relief is authorized," but when "there has been 'unjust enrichment' or 'actual loss caused by the misappropriation of the trade secret,' [then] damages are authorized." *Zurich Am. Life Ins. Co. v. Nagel*, 538 F. Supp. 3d 396, 403–04 (S.D.N.Y. 2021) (citing 18 U.S.C. § 1836.)

#### B. Application

##### 1. Interstate Commerce

Defendants argue that jurisdiction is lacking because Section 1836(b)(1)'s "interstate or foreign commerce" requirement is unmet. (Dkt. 46-1, at 5.) The Court disagrees.

First, it is unclear whether the commerce element of the DTSA is, in fact, jurisdictional. *Compare Gordon Grado M.D., Inc. v. Phoenix Cancer & Blood Disorder Treatment Inst. PLLC*, 603 F. Supp. 3d 799, 807–08 (D. Ariz. 2022) (noting the "dispute among courts about whether the

6

interstate-commerce requirement is jurisdictional," and concluding that districts in the Ninth Circuit "tend[] to treat [it] as jurisdictional") *and Gov't Emps. Ins. Co. v. Nealey*, 262 F. Supp. 3d 153, 172 (E.D. Pa. 2017) (finding that the "'interstate commerce' requirement is jurisdictional" (citations omitted)) *with Providence Title Co. v. Truly Title, Inc.*, 547 F. Supp. 3d 585, 595 (E.D. Tex. 2021) ("Nothing in 18 U.S.C. § 1836 indicates that the interstate-commerce element of a DTSA claim is jurisdictional.") *aff'd sub nom. Providence Title Co. v. Fleming*, 2023 WL 316138 (5th Cir. Jan. 19, 2023). Courts in this Circuit are split too, though the majority seemingly treat it as jurisdictional. *Compare Intertek Testing Servs., N.A., Inc. v. Pennisi*, 443 F. Supp. 3d 303, 326–27 (E.D.N.Y. 2020) (analyzing the requirement as jurisdictional) *and Exec. Trim Constr., Inc. v. Gross*, 525 F. Supp. 3d 357, 382 n.7 (N.D.N.Y. 2021) (discussing out-of-circuit authorities, in the context of analyzing the commerce element, and noting that they described it as a "jurisdictional requirement") *with Yager v. Vignieri*, No. 16-CV-9367 (DLC), 2017 WL 4574487, at *2 (S.D.N.Y. Oct. 12, 2017) (holding that the commerce element "does not implicate subject matter jurisdiction."). In the absence of definitive guidance from the Circuit, the Court will assume that the commerce requirement is jurisdictional.[6] That argument, therefore, must be resolved first. *See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

The Court finds that the jurisdictional requirement for Plaintiff's DTSA claim is satisfied. Section 1836 requires that the secret be "[1] related to [2] a product or service used in, or intended for use in, interstate or foreign commerce." *See* 18 U.S.C. § 1836(b). The SAC alleges that "[d]uring Fina's latest employment with Interior Metals, he personally oversaw and/or executed

---

[6] Notably, in *United States v. Agrawal*, 726 F.3d 235, 244 (2d Cir. 2013), the Circuit described similar language in the closely related Electronic Espionage Act, 18 U.S.C. § 1832, as "the jurisdictional element of the statute." *Id.* (quoting § 1832 and describing as jurisdictional the phrase "related to or included in a product that is produced for or placed in interstate or foreign commerce" (emphasis omitted)).

bids that led to the sale of goods installed in or shipped to New Jersey and Delaware." (Dkt. 42, ¶ 59.) The affidavit of Matthew Tommasi, the former Vice President of Interior Metals, states the same. (Dkt. 47-1.) Defendants argue that dismissal is required because none of the misappropriations alleged in the SAC occurred in the context of out-of-state conduct. (Dkt. 48, at 2–3.) Defendants' argument contorts the statutory language, which focuses on whether the secret itself—not how it was misused—related to a product or service that was used, or intended for use, in "interstate or foreign commerce." *See* 18 U.S.C. § 1836. Multiple courts have held that when the secret relates to such a product or service, *i.e.*, one that is used, or intended to be used, in the normal operation of the plaintiff's business in interstate or foreign commerce, jurisdiction is satisfied. *See, e.g.*, *Complete Logistical Servs., LLC v. Rulh*, 350 F. Supp. 3d 512, 520 (E.D. La. 2018) (finding jurisdiction when plaintiff "regularly transact[ed] business in states other than Louisiana . . . [and thus the] trade secrets relate[d] to [that] business and [were] used [] in interstate commerce"); *Gordon Grado M.D., Inc.* 603 F. Supp. 3d at 808 (finding jurisdiction, *inter* alia, because a medical clinic "accept[ed] payment from Medicare [which] constitutes an act in interstate commerce"); *Wells Lamont Indus. Grp. LLC v. Richard Mendoza & Radians, Inc.*, No. 17-CV-1136 (JZL), 2017 WL 3235682, at *3 (N.D. Ill. July 31, 2017) (finding that jurisdiction was sufficient because plaintiff, present in Illinois, sought to use the secret in a single interstate transaction, namely, a meeting in Texas to discuss doing business across state lines that was eventually cancelled). Here, both the pleadings and "evidence beyond the pleadings," *SM Kids, LLC*, 963 F.3d at 210, show that Interior Metals has regularly used and still uses its alleged trade secrets to obtain or attempt to obtain interstate business. (*See* Dkt 46, ¶ 36 (describing the alleged trade secrets); *see also* Declaration of Matthew Tommasi, Dkt. 47-1, ¶¶ 1, 2, 8–12 (discussing usage of the alleged secrets).) These materials and allegations more than satisfy the interstate

8

commerce requirement. Thus, the Court denies Defendants' motion to dismiss Plaintiff's Section 1836 claim for lack of jurisdiction.

### 2. Statute of Limitations

Plaintiff's Section 1836 claim is also timely. First, because Defendants raised the statute of limitations defense in their motion papers, but omitted it from their Reply, the Court may infer that Defendants have abandoned that argument. *See Doe v. Indyke*, 465 F. Supp. 3d 452, 466 (S.D.N.Y. 2020) ("Defendants do not respond to this argument in reply, and the Court deems them to have abandoned the argument."); *see also Williams v. New York State Unified Ct. Sys. Off. of Ct. Admin.*, No. 16-CV-2061 (VSB), 2017 WL 4402562, at *6 n.6 (S.D.N.Y. Sept. 30, 2017) ("Plaintiff addressed this issue in his opposition, but the Individual Defendants failed [to] address the issue in their reply and thus may have abandoned this argument."). In any event, the Court finds that this defense is patently meritless. "DTSA claims are subject to a three-year statute of limitations," and "[the] limitations period runs from the date on which the misappropriation . . . is discovered or by the exercise of reasonable diligence should have been discovered[.]" *Zirvi v. Flatley*, 433 F. Supp. 3d 448, 459 (S.D.N.Y. 2020) (citations and internal quotations marks omitted), *aff'd* 838 F. App'x 582, 585–86 (2d Cir. 2020). Here, the misappropriations alleged in the SAC began, at the earliest, in January 2019, when Fina re-joined Interior Metals as its COO.[7] (Dkt. 42, ¶ 27.) This action commenced roughly two and a half years later, in October 2021. (Dkt. 1.) Thus, there is simply no colorable argument that Plaintiff's DTSA claims are untimely, and the Court denies Defendant's motion to dismiss on that ground.

---

[7] As stated above, although Fina worked at Interior Metals from 2003–18, the Complaint does not allege any misappropriations by him until his return to the company in January 2019.

### 3. DTSA Violation

"Under New York law, '[a] plaintiff claiming misappropriation of a trade secret must prove that (1) it possessed a trade secret, and (2) the trade secret was used by defendant in breach of an agreement, confidence, or duty, or as a result of discovery by improper means.'" *See Intertek*, 443 F. Supp. 3d at 339 (quoting *Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 49 (2d Cir. 2019)). The DTSA defines a trade secret broadly: "all forms and types of financial, business, scientific, technical, economic, or engineering information . . . whether or how stored[.]" 18 U.S.C. § 1839(3). However, such information is secret only if "the owner . . . has taken reasonable measures to keep such information secret," and "the information derives independent economic value, actual or potential, from not being generally known[.]" *Id.* § 1839(3)(A)–(B).

#### a. Plaintiff Has Pleaded the Secrets with Sufficient Specificity

Defendants argue that Plaintiff has failed to plead its trade secrets with specificity because customer lists are public information that is widely known. (Dkt. 46-1, at 10–12.) This argument is meritless. First, Defendants misstate the trade secrets alleged in the SAC. (Dkt. 42, ¶ 36 (describing the secrets as "bidding strategy, client information, bidding requirements, and [Interior Metals'] intention[s]").) Defendants' argument therefore rests on a mischaracterization of Plaintiff's claim and the record, and even if it had merit—which it does not, as discussed *infra*— it would not justify dismissal of Plaintiff's DTSA claim, which is also based on other forms of trade secrets. Second, even construing this argument more liberally, the Court finds that the pleadings in this case are sufficiently specific. Specificity means "[sufficient to] inform the defendants of what they are alleged to have misappropriated[.]" *Zabit v. Brandometry, LLC*, 540 F. Supp. 3d 412, 422 (S.D.N.Y. 2021) (citations omitted); *see also Big Vision Priv. Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 257 (S.D.N.Y. 2014) ("The requirement[s] of [specificity and] particularity exist[] for the simple reason that a defendant must know what

10

constitutes a plaintiff's trade secret, so that it does not infringe upon that trade secret and so that the defendant can defend itself at any trial." (citation omitted)), *aff'd*, 610 F. App'x 69 (2d Cir. 2015). In other words, specificity does not put a plaintiff to a Hobson's choice: divulge your secrets publicly and completely, or refrain from suing to keep them confidential. *See Next Commc'ns, Inc. v. Viber Media, Inc.*, 758 F. App'x 46, 49 n.3 (2d Cir. 2018) (framing the question as whether a plaintiff identified their "trade secret with sufficient specificity to allow [defendant] to counter the claim"); *see also Zabit*, 540 F. Supp. 3d at 423 ("Courts in this District often allow trade secret claims that are broad so long as they provide sufficient detail that the defendant can identify the trade secret(s) at issue."). Here, the SAC articulates a concrete and specific list of materials Defendants allegedly misappropriated; these allegations are neither nebulous nor open-ended. *See* (Dkt. 42, ¶ 36); *see also Espire Ads LLC v. TAPP Influencers Corp.*, Nos. 21-CV-10623 (JGK), 23-CV-11068 (JGK), 2023 WL 1968025, at *9 (S.D.N.Y. Feb. 13, 2023) (finding "source code, marketing plans, client compilations, influencer compilations, programs, software applications, [and] software platforms" sufficiently specific (collecting cases)). Thus, the Court rejects Defendants' specificity argument.

Furthermore, there is no merit to Defendants' argument that Interior Metals' customer lists cannot constitute trade secrets because they do not contain information that "derive[s] independent economic value from not being generally known." (Dkt. 47, at 11.) As the case law makes clear, customer lists may, in appropriate circumstances, come within the broad definition of secrets under the DTSA. *See* 18 U.S.C. § 1839(3) ("all forms and types of financial, business, . . . economic . . . information . . . whether or how stored"); *see Sarkissian Mason, Inc. v. Enter. Holdings, Inc.*, 955 F. Supp. 2d 247, 256 (S.D.N.Y. 2013) (noting "[that] where the public information is widely available—such as the names of individuals on a customer list—courts have found trade secrets

11

because the information, despite being publicly known, was not easy to compile or duplicate given the amount of effort required to cull or gather the information"), *aff'd*, 572 F. App'x 19 (2d Cir. 2014); *Freedom Med., Inc. v. Sewpersaud*, 469 F. Supp. 3d 1269, 1275 (M.D. Fla. 2020) (holding that customer lists were trade secrets because they contained information not publicly available (collecting cases)).[8]

### b. Plaintiff Has Plausibly Alleged Misappropriation

#### (1) Legal Standard

Under the DTSA, "misappropriation" is defined as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." 18 U.S.C. § 1839(5)(A). "Improper means" include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." *Id.* § 1839(6)(A). Misappropriation may also mean "use of a trade secret of another without express or implied consent by a person" who "at the time of . . .

---

[8] In their Reply, Defendants changed their strategy and argued, for the first time, that there was no trade secret because Plaintiff had failed to take sufficient precautions. (Dkt. 48, at 4–6 (citing Dkt. 42, ¶ 36.).) However, "[t]he law in the Second Circuit is clear that arguments or requests for relief raised for the first time in reply briefs need not be considered." *In re Various Grand Jury Subpoenas*, 235 F. Supp. 3d 472, 485 (S.D.N.Y. 2017) (citation omitted); *see also Salis v. Mayorkas*, 2021 WL 6425204, at *1 (2d Cir. Oct. 21, 2021) ("arguments may not be raised for the first time in a reply brief" (citation omitted)), *cert. denied*, 142 S. Ct. 1231 (2022). Such a tactic deprives the opposing party of the opportunity to respond to the arguments leveled against it and the Court of the benefit of the adversarial process. In any event, the Court would have rejected this argument as meritless. "In evaluating reasonable secrecy measures, courts in this Circuit generally look to whether confidentiality or nondisclosure agreements are in place and whether the information is guarded by physical- or cyber-security protections." *See Exec. Trim Constr., Inc. v. Gross*, 525 F. Supp. 3d 357, 380 (N.D.N.Y. 2021) (citation omitted). The SAC notes that some Interior Metals employees "signed non-compete agreements with Interior Metals" (Dkt. 42, ¶ 7), and alleges that Fina contracted orally to "loyally serve the Company and not to directly compete with or otherwise harm its business throughout the course of his employment by Interior Metals" (*id.* ¶ 72). Thus, drawing all appropriate inferences in Plaintiff's favor, the Court would have rejected the defense argument that "Interior [Metals] did nothing to protect its supposed 'trade secrets.'" (Dkt. 48, at 6.)

12

[the] use, knew or had reason to know that the knowledge of the trade secret was" either "acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret." *Id.* § 1839(5)(B)(ii)(II); *accord Uni-Sys., LLC v. United States Tennis Ass'n, Inc.*, 350 F. Supp. 3d 143, 171 (E.D.N.Y. 2018) (stating that under New York law, a plaintiff claiming misappropriation of a trade secret must prove: "(1) it possessed a trade secret, and (2) defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means" (citation omitted)).

### (2) Application

Defendants first argue that the "improper means" element is not satisfied, because "Fina never agreed not to use information" he acquired during his employment, and the "the parties' only agreement" was for the provision services. (*See* Dkt. 46-1, at 13.) Defendants' argument on that score appears uninhibited by any knowledge of the record, the case law, or the relevant statute. The SAC alleges that in "January 2019 . . . Fina [orally] agreed to . . . serve [Interior Metals] and not to directly compete with or otherwise harm its business throughout the course of his employment by Interior Metals." (Dkt. 42, ¶ 72.) At this juncture, the Court must accept these allegations as true and, based on them, rejects Defendants' argument. Second, Defendants double-down on their decision to ignore the SAC and argue that no contractual breach occurred because, in their view, Interior Metals knew of Fina's behavior, and no evidence proves that the alleged misappropriations caused FMI to submit its bids. (Dkt. 46-1, at 13.) As before, the Court is required to accept all non-conclusory allegations as true; whether evidence can be marshalled to prove them, or other evidence may later rebut them, is irrelevant at this stage. Finally, Defendants argue that Fina could not have misappropriated the information because it was disclosed to him voluntarily. (Dkt. 46-1, at 13.) This argument flatly ignores Section 1839's definition of

13

misappropriation, which includes unauthorized use of lawfully acquired information as defined in 18 U.S.C. § 1839(5)(B)(ii)(II). Plaintiff's theory of this case is that Fina misappropriated trade secrets when he made unauthorized use, that is, in contravention of his oral agreement with Interior Metals, of information that had been disclosed to him to carry out his job. (Dkt. 47, at 11);[9] *see also* 18 U.S.C. § 1839(5)(B)(ii)(II). In sum, the Court finds that Plaintiff has sufficiently alleged trade-secret misappropriation.[10]

### III. Remaining State Law Claims

Most of Defendants' remaining arguments rest on gross mischaracterizations of the SAC, erroneous descriptions of legal authority, or conclusory assertions that certain arguments fail without any further explanation (including, for example, citations to any law or the record). These arguments are patently meritless and warrant only a brief discussion. First, Defendants' argument that there was no breach of fiduciary duty because Interior Metals knew of Fina's operation of FMI ignores the SAC's allegations that Fina was subject to an oral agreement not to compete and

---

[9] Plaintiff also alleges that Fina misappropriated the fact that the "solicitation of bids" was ongoing. (Dkt. 47, at 11.) Defendants have not addressed that portion of the claim. However, the Court doubts that such information qualifies as a trade secret. A trade secret is information which "derives independent economic value, actual or potential, from *not being generally known to, and not being readily ascertainable through proper means by*, another person[.]" *See* 18 U.S.C. § 1839(3)(B) (emphasis added). A bid is usually widely publicized, and its existence is usually "readily ascertainable through proper means," namely, asking the person who is soliciting the bids for information. *Id.* However, the Court need not address that issue at this time. Indeed, evidence could be developed through discovery demonstrating that the bidding process in the metal industry was not readily ascertainable or generally known.

[10] For similar reasons, Defendants' argument that Plaintiff's Complaint must fail because, in their view, there are other lawful reasons that might have led to the events described in the Complaint is utterly frivolous. (Dkt. 46-1, at 14.) Further, to the extent Defendants want the Court to believe that they stand ready to prove their credibility, they have done themselves a disservice by repeatedly contorting and misstating the record. (*See, e.g.*, Dkt. 46-1, at 14 (citing a paragraph in the Amended Complaint to show that FMI's engaged in "business as usual" because, on one occasion, it submitted a bid higher than Interior Metals' bid for a certain project, when, in fact, the same paragraph states that Fina later submitted an Interior Metals' bid that was higher than FMI's bid).)

14

that Fina "was the only individual within Interior Metals aware of the breach of that agreement." (Dkt. 42, ¶¶ 40, 72.)  Second, New York case law undercuts Defendants' argument that the oral non-compete contract ran afoul of the Statute of Frauds; Fina's employment period was undefined and might have lasted for less than a year.  *See Mtivity, Inc. v. Off. Depot, Inc.*, 525 F. Supp. 3d 433, 439 (E.D.N.Y. 2021) ("[Under New York law,] [m]ost agreements terminable at will are not subject to the Statute of Frauds because performance could be completed in less than one year if either party were to exercise its termination option" (citing *BPP Wealth, Inc. v. Weiser Capital Mgmt., LLC*, 623 F. App'x 7, 12–13 (2d Cir. 2015)).  Third, the allegation that FMI and Interior Metals never entered into an oral contract again blatantly ignores the allegations in the SAC.  (Dkt. 42, ¶ 75 ("Fina and [FMI] entered into a contract with Interior Metals[.]").)  Fourth, the argument that the oral contract was a nullity for lack of consideration may not be raised for the first time on Reply.  (Dkt. 48, at 7–8.)  Fifth, Defendants' assertion that they did not interfere with the non-compete agreement between Interior Metals and Eric Ulmer, a former Interior Metals' employee, as well as other Interior Metals employees subject to non-compete agreements, does not annul the specific factual allegations to the contrary in the SAC.  (Dkt. 42, ¶ 7 ("Fina has been in contact with employees who had signed non-compete agreements with Interior Metals in an attempt to induce them to violate their agreements and join [FMI] in some capacity."); *id.* ¶ 85 (FMI "hired Eric Ulmer, a former employee of Interior Metals, whose noncompete agreement . . . prohibited him from competing directly with Interior Metals[.]").)  Sixth, Defendants cite no authority for their argument that the unauthorized taking and transportation of property does not amount to conversion until the property is brought inside the tortfeasor's residence.  Aside from being patently absurd, that is not the law.  *See C & B Enterprises USA, LLC v. Koegel*, 26 N.Y.S.3d 185, 187 (N.Y. App. Div. 2016) ("A conversion takes place when someone, intentionally and without

15

authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession."). Seventh, because the Complaint sufficiently pleads M. Fina's personal involvement in the scheme, her dismissal is not required. (Dkt. 42, ¶¶ 37, 39, 41.) Eighth, the unjust enrichment claim is sufficiently pled and dismissal of the quantum meruit claim at this juncture as duplicative is inappropriate. It is axiomatic that a "plaintiff is allowed to plead in the alternative" and "the alternative claims need not be consistent." *Breton v. City of New York*, 404 F. Supp. 3d 799, 814 (S.D.N.Y. 2019). Unlike unfair competition and DTSA claims, whose elements are fundamentally the same, unjust enrichment and quantum meruit "elements . . . are distinct, [even if] for all intents and purposes, the[y] are indistinguishable." *See Shearon v. Comfort Tech Mech. Co.*, 936 F. Supp. 2d 143, 153 (E.D.N.Y. 2013); *cf. Turret Labs USA, Inc. v. CargoSprint, LLC*, No. 19-CV-6793 (EK) (RML), 2021 WL 535217, at *6 (E.D.N.Y. Feb. 12, 2021) ("The elements of a misappropriation of trade secrets claim under New York common law 'are fundamentally the same as those sustaining a claim under the DTSA.'" (citation omitted)), *aff'd*, 2022 WL 701161 (2d Cir. Mar. 9, 2022). Undoubtedly, the Court will not allow duplicative recovery if this matter goes to the jury. At this juncture, however, in the absence of discovery, the Court declines to dismiss the quantum meruit claim based on duplicity. *See Learning Annex Holdings, LLC v. Rich Glob., LLC*, 860 F. Supp. 2d 237, 250 (S.D.N.Y. 2012) (recognizing "the lack of clarity in this area of law" as to whether unjust enrichment and quantum meruit claims are identical and holding that at least "in the absence of an enforceable contract [the claims] are not distinct grounds for recovery"), *aff'd sub nom. Learning Annex Holdings, LLC v. Cashflow Techs., Inc.*, 652 F. App'x 67, 71 (2d Cir. 2016).[11] Finally, considering the Court's

---

[11] For that reason, the Court agrees that Plaintiff's unfair competition claim is duplicative and should be dismissed. "A claim for unfair competition based on the same allegations as a claim

prior conclusions, the argument that all of the derivative claims—*i.e.*, for accounting and civil conspiracy—must be dismissed, because the substantive allegations are insufficient, also fails.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion to dismiss the SAC pursuant to Rule 12(b)(1) and 12(b)(6), except as to Plaintiff's unfair competition claim, which is dismissed as duplicative of Plaintiff's DTSA claim. The motion for oral argument is denied as moot.[12]

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 31, 2023
      Brooklyn, New York

---

for misappropriation of trade secrets is treated as a single cause of action," and should be dismissed as duplicative. *See Uni-Sys., LLC.*, 350 F. Supp. at 179. As pleaded in the SAC, Plaintiff's unfair competition claim is indistinguishable, on its facts, from its DTSA claim. Plaintiff's proposed distinction—that the unfair competition claim relates solely to the inflation of Interior Metals' bid prices (Dkt. 47, at 14–15)—is without a difference. The SAC makes clear that the alleged inflation was inextricably intertwined with unauthorized disclosures of Interior Metals trade secrets by Fina to M. Fina, which led her to "execute[] lower competing bids on behalf of" FMI. (Dkt. 42, ¶ 63.) Thus, because the "claim for unfair competition is premised on the same allegations as [the] misappropriation of trade secrets claim[,] [the claim] is duplicative and is dismissed without prejudice." *Uni-Sys., LLC*, 350 F. Supp. at 179.

[12] The Court has carefully reviewed and considered all the arguments and evidence that any party has submitted in this action to date. To the extent any such materials or arguments bore on the issues presented in this Memorandum and Order, but were not explicitly addressed herein, the Court has found them without merit or relevance. *See Clemons v. Mississippi*, 494 U.S. 738, 747 n.3 (1990) (noting that federal courts implicitly reject arguments they refuse to address).